# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

## 04  10569  JLT   CIVIL ACTION NO.

KELLY HARMUTH,                              )
                                           )
    Plaintiff,         MAGISTRATE JUDGE _____
                                           )
v.                                          )
                                           )
CONTINENTAL CASUALTY COMPANY, )
CNA INSURANCE COMPANIES,              )
SBLI GROUP DISABILITY PLAN            )
                                           )
    Defendants.         )
                                           )

**COMPLAINT**

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK _____
DATE 3/23/04

## INTRODUCTION

1.  Plaintiff, Kelly Harmuth ("Ms. Harmuth"), brings this action against CNA Insurance

    Companies ("CNA"), Continental Casualty Company ("CCC"), and Savings Bank Life

    Insurance Company of Massachusetts Group Disability Plan ("Plan") (collectively

    referred to as "Defendants"), for violation of the Employment Retirement Income

    Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et. seq.* ("ERISA"). Ms. Harmuth

    is a participant in the Plan, an ERISA welfare benefit plan whose claims administration is

    handled by CCC. The Plan is fully insured by a policy of insurance issued by CCC. The

    Plan number is SR-83102765.

2.  This Complaint challenges the Defendants' unlawful denial of Ms. Harmuth's long term

    disability ("LTD") income benefits despite uncontroverted objective medical evidence

    demonstrating Ms. Harmuth's qualifications for said benefits, and thereby depriving Ms.

1

Harmuth of the appropriate LTD benefits due her under the Plan.

3.      Ms. Harmuth is filing this action to recover benefits due under the Plan, to enforce the present rights existing therein, to clarify her rights under the terms of the Plan, and to recover costs and attorneys' fees as provided by ERISA.

## JURISDICTION

4.      This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the plan was administered in this district and the defendant's breach of its ERISA obligations took place in this district.

## PARTIES

5.      Ms. Harmuth is a 44-year-old individual who currently resides in Seaford, New York. Ms. Harmuth is a vested participant in a SBLI employee benefit plan, within the meaning of 29 U.S.C. § 1002(2)(7). Ms. Harmuth has standing to bring this action under 29 U.S.C. § 1132(a).

6.      The defendant, CNA, is a for-profit corporation with its principal place of business at CNA Plaza, Chicago, Illinois 60685. CNA transacts business in Delaware.

7.      The defendant, CCC, is a for-profit corporation with its principal place of business at CNA Plaza, Chicago, Illinois 60685. The Plan is fully insured through a policy of insurance, policy number SR-83102765, issued by CCC to SBLI. CCC determines eligibility for benefits pursuant to the terms of the Plan.

8.      The Plan under which the Plaintiff is suing is a "group disability plan" issued by CCC to SBLI, a Massachusetts corporation with its principal place of business at 1 Linscott Road,

Woburn, Massachusetts. The Plan number is SR-83102765. (*See* Exhibit A.)

### STATEMENT OF FACTS

#### Onset of Lyme Disease and Treatment

9.      In 1993, Ms. Harmuth was diagnosed with Lyme disease. At the time of her diagnosis,
        Ms. Harmuth resided in New Jersey.

10.     Since her diagnosis of Lyme disease, Ms. Harmuth has experienced varying levels of the
        following symptoms: fatigue, weakness, memory loss, depression, dizziness,
        lightheadedness, lack of balance, muscle and joint aches, fever, flushing sweats, prickly
        sensations in arms or hands, occasional swelling, palpitations, diarrhea, heavy menses,
        urinary tract infections, difficulties with sleep, and nightmares.

11.     To treat her symptoms of Lyme Disease, Ms. Harmuth was first medicated with oral
        tetracycline, doxycycline, and Ampicillin. Through the years, Ms. Harmuth tried
        intravenous cefotaximine and antibiotic medications to relieve her symptoms. Despite
        these treatments, Ms. Harmuth's symptoms fluctuated, and she went from periods of not
        being able to work at all to full time work.

12.     In 1996, Ms. Harmuth was hired at PricewaterhouseCoopers as a principal consultant in
        the Change Integration Division. Despite antibiotic treatment, Ms. Harmuth continued to
        experience varying levels of her symptomology. However, Ms. Harmuth maintained
        employment at Price Waterhouse for three years.

13.     In 1998-1999, Ms. Harmuth took weekly Bicillin, which appeared to alleviate her Lyme
        disease symptoms. By the summer of 1999, Ms. Harmuth was able to function without
        the Bicillin, as symptoms of her Lyme disease were under control.

**Relocation Process And Initial Physical**

14. On September 7, 1999, Ms. Harmuth began employment at SBLI as Senior Vice President and Chief Information Officer. Ms. Harmuth resided in North Wales, Pennsylvania, at the time she accepted the position.

15. Ms. Harmuth's new employment at SBLI required her to relocate to Massachusetts, as SBLI's office was located in Woburn, Massachusetts.

16. As part of the relocation process, Ms. Harmuth sought out a new primary care physician in Massachusetts. Ms. Harmuth retained Deborah Shih, M.D., an internist at Lahey Clinic in Burlington, Massachusetts, to serve in this function.

17. On November 29, 1999, Ms. Harmuth was seen for the first time by Drs. Shih and Nancy Andrea, a medical resident in the Lahey Clinic. The purpose of the visit was for a general physical examination. At this time, Ms. Harmuth provided Drs. Shih and Andrea with a background of her medical history. Ms. Harmuth discussed her history of Lyme disease, fibromyalgia and chronic anxiety disorder. She also discussed prior treatment for babesiosis and ehrlichiosis.

18. The focus of the November 29, 1999, physical exam was treatment for Ms. Harmuth's fibromyalgia, depression and anxiety. Dr. Shih prescribed imipramine therapy, Prozac and Xanax to address the symptoms of the fibromyalgia, depression and anxiety that Ms. Harmuth was experiencing. The medication prescribed to Ms. Harmuth on this day had no relation to Lyme disease.

19. Ms. Harmuth's medical records demonstrate that Drs. Shih and Andrea did not treat Ms. Harmuth for Lyme disease on November 29, 1999.

4

20.    On December 16, 1999, Ms. Harmuth was seen by Dr. Forgacs in the Infectious Disease department of the Lahey Clinic. At that time, Dr. Forgacs discontinued Ms. Harmuth's antibiotic medication. Dr. Forgacs also tested Ms. Harmuth for Lyme disease, ehrlichia, HIV, malaria, and babesia. All tests returned negative results.

## Progression of Symptoms/Basis for Disability

21.    On February 16, 2000, Ms. Harmuth saw Dr. Sam Donta of Boston University Medical Group, for treatment of her Lyme disease. Dr. Donta specializes in Infectious Diseases and Biomolecular Medicine.

22.    Dr. Donta first treated Ms. Harmuth with tetracycline. At that time, Ms. Harmuth reported symptoms of myalgias, memory loss, irregular menses, nightmares and difficulty staying asleep. As a result of Dr. Donta's treatment, Ms. Harmuth reported a notable improvement in her symptoms. However, Ms. Harmuth began suffering from new symptoms, including a "burning sensation on her skin, rash on her face, sweats, swelling of her face and hands, vaginal infections. . . difficulty with speech accompanied by (sic) [stuttering]."

23.    Dr. Donta subsequently changed Ms. Harmuth's treatment to clarithromycin plus hydroxychloroquine. Ms. Harmuth's symptoms of increased short term memory loss, increased stuttering, difficulty with word finding, fatigue, and rashes on her face and hands persisted despite this treatment.

24.    As of July 26, 2000, Dr. Donta ascertained that Ms. Harmuth's symptoms had progressed to the level where she was unable to perform the duties of her occupation on a continuous basis and was therefore disabled. Specifically, Ms. Harmuth had difficulties with speech,

and her work day primarily consisted of talking either in meetings or on the phone. Ms. Harmuth also had problems with her short term memory. For example, she would often begin a sentence and forget what she meant to say before completing her sentence. Ms. Harmuth also reported rashes on her face.

25.    Ms. Harmuth continued to work, despite medical advice, in order to finish certain projects that she had begun.

26.    By August 8, 2000, Ms. Harmuth had come to realize that her disability made it impossible for her to continue work.

27.    On August 30, 2000, following an examination of Ms. Harmuth, Dr. Donta further confirmed that the worsening of Ms. Harmuth's symptoms was indicative of her Lyme disease and was the cause of her disability.

**Long Term Disability Plan**

28.    As an employee of SBLI, Ms. Harmuth was entitled to LTD benefits, under a contract of insurance between SBLI and CNA. This benefit was available to Ms. Harmuth after ninety days of employment at SBLI.

29.    CCC both funds and administers the Plan under which Ms. Harmuth is suing.

30.    Under the terms of the Plan, Ms. Harmuth is entitled to receive 60% of her monthly earnings to a maximum benefit of $13,000 a month until she turns 65 years old.

31.    Under the terms of the Plan, "disability" is defined as follows:

Class I:    "Total Disability" means that the Insured Employee, because of Injury or Sickness, is:

1.    continuously unable to perform the substantial and material duties of the Insured

6

Employee's regular occupation;

2.    under the regular care of a licensed physician other than the Insured Employee; and

3.    not gainfully employed in any occupation for which the Insured Employee is or becomes qualified by education, training or experience

38.    The Plan describes Class I Employees as, "all active, full-time, Salaried Exempt Employees." An active, full time employee works at least 37.5 hours per week.

39.    "Insured Employee" is defined as "an employee whose insurance is in force under the terms of this policy."

40.    "Sickness" is defined as a "disease causing loss which begins while the Insured Employee's coverage is in force. It does not include any loss resulting from a Pre-existing Condition"

41.    The Plan defines "Pre-existing Condition" as "a condition for which medical treatment or advice was rendered, prescribed or recommended within 3 months prior to the Insured Employee's effective date of insurance. A condition shall no longer be considered pre-existing if it causes loss which begins after the employee has been insured under this policy for a period of 12 consecutive months."

42.    The Plan further states, "If a Pre-Existing Condition Exclusion is included in this policy, benefits may be payable for a disability due to a pre-existing condition for eligible employees who:"

1.    Were actively-at-work on the date of transfer; and

2.    Insured under this policy on its Effective Date.

7

43.    Except for the terms defined above, the Plan contains no other definition or explanation for the terms "disability" or "pre-existing condition."

**Eligibility for LTD Benefits**

44.    Under this Plan, an employee is eligible for coverage after three months of employment.

45.    Ms. Harmuth began work at SBLI on September 7, 1999.  Under the Plan, Ms. Harmuth's effective date of coverage was December 7, 1999.

**Termination from SBLI**

46.    On August 8, 2000, Ms. Harmuth met with Ms. Sandra Williams, Senior Vice President of Human Resources at SBLI.  During this meeting, Ms. Harmuth informed Ms. Williams that Dr. Donta recommended that she leave SBLI on disability, due to her Lyme disease. At this time, Ms. Harmuth requested an application for LTD benefits.  Ms. Williams did not provide Ms. Harmuth with an application for LTD benefits, and informed Ms. Harmuth that she would need to discuss the matter with Mr. Sheridan, President and Chief Executive Officer of SBLI.  Ms. Williams would not discuss Ms. Harmuth's disability with her at that time and repeatedly told Ms. Harmuth that she was not eligible for FMLA leave because she had not been employed for a full year.

47.    Mr. Sheridan was unable to meet with Ms. Harmuth regarding her disability until August 23, 2000, when he terminated Ms. Harmuth from her occupation as Senior Vice President Chief Information Officer at SBLI.  Ms. Harmuth was employed at SBLI for 11 months and 23 days.

**Application for LTD Benefits**

48.    After her termination on August 23, 2000, Ms. Harmuth made numerous attempts to

8

obtain an application to file for LTD benefits. Her first request for an LTD application was on August 8, 2000, when she met with Ms. Williams of SBLI.

49.    Based on the information gained from SBLI's Human Resources, Ms. Harmuth believed that she was not eligible for LTD benefits. Ms. Harmuth was under the belief, based on discussions with Ms. Williams, that a terminated employee could not apply for benefits, even if their disability began prior to their termination from employment.

50.    Approximately one year later, upon the advice of an attorney, Ms. Harmuth was advised that she had the right to obtain a copy of personnel file from SBLI as well as information regarding SBLI's LTD carrier.

51.    On October 30, 2001, Ms. Harmuth requested from Mr. Sheridan information on SBLI's LTD insurance carrier, including the insurance company name, contact person, and contact phone number. Mr. Sheridan did not comply with Ms. Harmuth's request.

52.    On November 2, 2001, Ms. Williams informed Ms. Harmuth that she did not meet the eligibility requirements to receive benefits under the Plan. Again, Ms. Williams failed to provide Ms. Harmuth with the information regarding SBLI's LTD insurance carrier.

53.    On November 16, 2001, Ms. Harmuth wrote to Ms. Williams to again request information on SBLI's LTD carrier, as Ms. Harmuth had requested this information numerous times since her termination.

54.    On December 11, 2001, Ms. Williams provided Ms. Harmuth with the name of SBLI's LTD carrier, account representative, and policy number.

55.    On January 10, 2002, Ms. Harmuth filed her application for LTD benefits with CNA.

56. On January 11, 2002, Ms. Dorothy Johnson, a Claims Specialist at CNA, requested an employee's statement, employer's statement and an attending physician's statement from Ms. Harmuth in order to evaluate her claim.

57. Ms. Harmuth subsequently complied with CNA's requests.

**Denial of LTD Benefits**

58. On April 3, 2002, CNA denied Ms. Harmuth's LTD benefits under the pre-existing condition exclusion contained in her Plan.

59. In denying Ms. Harmuth's benefits, CNA erroneously claimed that Ms. Harmuth's effective date of coverage under her Plan was January 1, 2000.

60. Ms. Harmuth's effective date was coverage was December 7, 1999, as Ms. Harmuth's employment at SBLI began on September 7, 1999.

61. CNA further asserted that Dr. Donta advised Ms. Harmuth to stop working in July 2000. This date fell within twelve months of Ms. Harmuth's effective date of coverage (January 1, 2000); therefore, according to CNA, Ms. Harmuth was subject to the pre-existing condition exclusion.

62. Specifically, CNA claimed, in support of its denial, that Ms. Harmuth was seen on November 28, 1999, and at that time, "your diagnoses were noted as Lyme disease, babiosis/erlichiosis and fibromyalgia." CNA further stated that, "Your symptoms included poor sleep and occasional heart palpitations. The physician also noted that you were taking multiple medications for your symptoms at that time."

63. CNA claimed that the treatment received by Ms. Harmuth during the three-month exclusion period consisted of treatment for the condition for which Ms. Harmuth claimed

10

disability.

64.    CNA did not perform a full evaluation of Ms. Harmuth's medical condition, as the denial was based solely on the pre-existing condition exclusion contained in Ms. Harmuth's Plan.

**Appeal Process:**

65.    On May 16, 2002, Ms. Harmuth appealed her denial of LTD benefits. Ms. Harmuth submitted a letter from her primary care physician, Dr. Shih, confirming that she was not treated for Lyme disease, babesiosis or ehrlichiosis at her November 29, 1999, physical exam.

66.    In her appeal, Ms. Harmuth further explained that she was not suffering from Lyme disease during the 90 day waiting period, September 7, 1999, through December 7, 1999. Instead, Dr. Shih treated Ms. Harmuth for fibromyalgia, depression and anxiety, conditions which did not contribute to Ms. Harmuth's current disability of Lyme disease.

67.    On May 24, 2002, CNA informed Ms. Harmuth that her claim was forwarded to the Appeals Committee for their review.

68.    On July 1, 2002, CNA upheld the denial of Ms. Harmuth's LTD benefits, based on the pre-existing condition exclusion of Ms. Harmuth's Plan. CNA informed Ms. Harmuth that she had exhausted her appeals review.

69.    On June 28, 2002, Ms. Harmuth advised CNA that she was filing a consumer complaint with the Attorney General's Office in Massachusetts.

**Appeal of LTD Benefits Through Attorney General's Office:**

70.    On November 8, 2002, Ms. Lydia Froese of the Public Protection Bureau Insurance

Division in the Massachusetts Office of the Attorney General, informed CNA that Ms.

Harmuth had submitted a consumer complaint against CNA. Ms. Froese also requested a

copy of Ms. Harmuth's application for LTD benefits, as it was her belief that Ms.

Harmuth was not treated for Lyme disease during the pre-existing conduction exclusion

period.

71.    On November 15, 2002, Ms. Froese received a complete copy of Ms. Harmuth's

application for LTD benefits from CNA.

72.    On December 24, 2002, Ms. Froese informed CNA that she was aiding Ms. Harmuth with

her appeal of her claim for LTD benefits. Ms. Froese requested thirty additional days to

complete the appeal.

73.    On January 2, 2003, CNA denied Ms. Froese's request for additional time in which to

submit a appeal on Ms. Harmuth's behalf. Ms. Kowzan informed Ms. Froese that a final

denial on Ms. Harmuth's claim for benefits had been made on July 1, 2002, and at that

time, Ms. Harmuth had exhausted her administrative remedies.

74.    On January 8, 2003, Ms. Froese requested that CNA reconsider information regarding

Ms. Harmuth's claim, CNA's denial was based on inaccurate information.

75.    Ms. Froese submitted evidence to CNA that it had used an incorrect effective date of

coverage, specifically January 1, 2000, to evaluate Ms. Harmuth's claim. Pursuant to the

terms of the Plan, Ms. Froese argued that Ms. Harmuth's effective date of coverage was

December 7, 1999, three months after her date of employment, September 7, 1999. Ms.

Froese further noted that Ms. Harmuth's medical records established that she had not

received treatment for Lyme disease on November 28, 1999. Rather, the appointment

12

was a general physical examination.

76.  Ms. Froese also established that Ms. Harmuth had blood work done on December 16, 1999, by Dr. Forgacs of the Infectious Disease department in the Lahey Clinic. This blood work fell after Ms. Harmuth's effective date of coverage, or December 7, 1999.

77.  On March 27, 2003, Ms. Cheryl Sauerhoff, Appeals Team Leader at CNA, informed Ms. Froese that the Appeals Committee was reviewing Ms. Harmuth's file and would have a response by April 4, 2003.

78.  On April 2, 2003, Ms. Joye Kelly, a Claims Consultant for CNA, affirmed CNA's denial on Ms. Harmuth's prior claim for LTD benefits.

79.  However, in her April 2, 2003, denial, Ms. Kelly acknowledged that CNA had incorrectly calculated Ms. Harmuth's effective date of coverage. Ms. Kelly acknowledged that the correct effective date was December 7, 1999.

80.  The basis for Ms. Kelly's affirmation of the denial of Ms. Harmuth's LTD benefits was the pre-existing condition exclusion. Ms. Kelly claimed that since Ms. Harmuth had not worked at SBLI for a consecutive 12 months, she was subject to the pre-existing condition exclusion. Ms. Kelly further stated that Ms. Harmuth received medical treatment or advice for her claimed disability of Lyme disease between September 7, 1999, and December 7, 1999, the three months prior to her effective date of coverage; therefore, Ms. Harmuth was excluded from LTD benefits under her Plan.

81.  CNA failed to provide Ms. Harmuth with a full and fair review of her claim for benefits.

82.  CNA's denial of Ms. Harmuth's claim was wrongful, unreasonable, contrary to the substantial evidence, contrary to the terms of the Plan and contrary to law.

83.    Due to the unlawful action of defendants under ERISA, Ms. Harmuth has lost her rightful

LTD benefits.

84.    Having exhausted the administrative procedures provided by CNA, Ms. Harmuth now

brings this action.

### FIRST CAUSE OF ACTION
### (Enforcement of Terms of Plan
### Action for Unpaid Benefits)
### (ALL DEFENDANTS)

85.    Ms. Harmuth realleges each of the paragraphs above as if fully set forth herein.

86.    The Plan is a contract.

87.    Ms. Harmuth has performed all of her obligations under the contract.

88.    29 U.S.C. § 1132(a)(1)(B) states that:

A civil action may be brought ---

(1) by a participant or beneficiary –

(A)  for the relief provided for in subsection (c) of this section, or

(B)  to recover benefits due to her under the terms of her plan, to enforce her

rights under the terms of the plan, or to clarify her rights to future benefits

under the terms of the plan.

89.    The Defendants' actions constitute an unlawful denial of benefits under ERISA, as

provided in 29 U.S.C. § 1132(a)(1)(B).

90.    The Defendants unlawfully denied Ms. Harmuth's benefits in part by: (1) rejecting the

substantial evidence supporting Ms. Harmuth's claim that she was not subject to the

14

Plan's pre-existing condition exclusion; and (2) denying Ms. Harmuth a full and fair review of their decision to deny her benefits.

91. In accordance with 29 U.S.C. §1132, Ms. Harmuth is entitled to be paid benefits under the Plan based upon her disabled status from and after July 26, 2000, and continuing into the present.

92. The Defendants have refused to provide Ms. Harmuth with these disability benefits and is, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

93. As a direct and proximate result of this breach, Ms. Harmuth has lost the principal and the use of her rightful LTD benefits.

**SECOND CAUSE OF ACTION**
**(Attorneys' Fees and Costs)**
**(ALL DEFENDANTS)**

94. Ms. Harmuth realleges each of the paragraphs above as if fully set forth herein.

95. Under the standards applicable to ERISA, Ms. Harmuth deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

96. The Defendants have the ability to satisfy the award.

97. Ms. Harmuth's conduct of this action is in the interests of all participants suffering from physical conditions who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

98. The Defendants acted in bad faith in denying Ms. Harmuth's benefits under the Plan.

99.  The award of attorneys' fees against the Defendants will deter others acting under similar circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that the Court:

(1)  Declare, adjudge and decree that Ms. Harmuth is entitled to ongoing LTD benefits as calculated under the terms of the Plan.

(2)  Award Ms. Harmuth the full amount of unpaid benefits under the Plan to which he is entitled, together with such pre-judgment interest as may be allowed by law.

(3)  Award Ms. Harmuth the costs of this action and reasonable attorneys' fees; and

(4)  Award such other relief as the court deems just and reasonable.

Respectfully submitted for the Plaintiff,

By:
Mala M. Rafik
BBO No. 638075
ROSENFELD & RAFIK, P.C.
44 School Street, Suite 410
Boston, MA 02108
617-723-7470

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) _____ KELLY HARMUTH v. CONTINENTAL CASUALTY COMPANY _____

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

     ___    I.      160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

     _X_    II.      195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.      *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

     ___    III.      110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

     ___    IV.      220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

     ___    V.      150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

            N/A

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

            YES ☐      NO **X**

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST?   (SEE 28 USC §2403).

            YES ☐      NO **X**

IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

            YES ☐      NO **X**

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

            YES ☐      NO **X**

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

            YES **X**      NO ☐

     A.      IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

     EASTERN DIVISION **X**      CENTRAL DIVISION ☐      WESTERN DIVISION ☐

     B.      IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

     EASTERN DIVISION ☐      CENTRAL DIVISION ☐      WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  MALA M. RAFIK

ADDRESS _  ROSENFELD & RAFIK, P.C., 44 SCHOOL STREET, SUITE 410, BOSTON, MA 02108

TELEPHONE NO. _  (617) 723-7470

(CategoryForm[1].wpd - 11/27/00)

℁JS 44  (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

KELLY HARMUTH

**DEFENDANTS**

CONTINENTAL CASUALTY COMPANY, CNA INSURANCE COMPANIES, SBLI GROUP DISABILITY PLAN

**(b)** County of Residence of First Listed Plaintiff  MIDDLESEX
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Mala M. Rafik
Rosenfeld & Rafik, P.C.
44 School Street, Suite 410
Boston, MA 02108
(617) 723-7470

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1  U.S. Government
     Plaintiff

**X** 3  Federal Question
        (U.S. Government Not a Party)

☐ 2  U.S. Government
     Defendant

☐ 4  Diversity
     (Indicate Citizenship of Parties
     in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                     and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>  &amp; Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>  Student Loans<br>  (Excl. Veterans)<br>☐ 153 Recovery of Overpayment<br>  of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>  Liability<br>☐ 320 Assault, Libel &amp;<br>  Slander<br>☐ 330 Federal Employers'<br>  Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>  Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>  Product Liability<br>☐ 360 Other Personal<br>  Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury—<br>  Med. Malpractice<br>☐ 365 Personal Injury —<br>  Product Liability<br>☐ 368 Asbestos Personal<br>  Injury Product<br>  Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>  Property Damage<br>☐ 385 Property Damage<br>  Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food &amp; Drug<br>☐ 625 Drug Related Seizure<br>  of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. &amp; Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational<br>  Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br><br>☐ 423 Withdrawal<br>  28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>  Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/<br>  Exchange<br>☐ 875 Customer Challenge<br>  12 USC 3410 |
| **REAL PROPERTY** | | | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease &amp; Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br>  Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate<br>  Sentence<br>  Habeas Corpus:<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus &amp; Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards<br>  Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting<br>  &amp; Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>**X** 791 Empl. Ret. Inc.<br>  Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>  or Defendant)<br>☐ 871 IRS—Third Party<br>  26 USC 7609 | ☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of<br>  Information Act<br>☐ 900 Appeal of Fee<br>  Determination Under Equal<br>  Access to Justice<br>☐ 950 Constitutionality of<br>  State Statutes<br>☐ 890 Other Statutory Actions |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

**x** 1  Original
       Proceeding

☐ 2  Removed from
     State Court

☐ 3  Remanded from
     Appellate Court

☐ 4  Reinstated
     or
     Reopened

☐ 5  Transferred from
     another district
     (specify)

☐ 6  Multidistrict
     Litigation

☐ 7  Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause.
Do not cite jurisdictional statutes unless diversity.)

The Plaintiff files this action under ERISA, 29 U.S.C. §1132(a) to recover disability benefits due her under her long-term disability plan administered by Continental Casualty Company.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE  **3-23-04**

SIGNATURE OF ATTORNEY OF RECORD
*Mala Rafik*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____